406 A.2d 751

**COMMONWEALTH of Pennsylvania**

**v.**

**Harold V. CORSA, Appellant.**

Superior Court of Pennsylvania.

Argued March 14, 1978.

Decided June 13, 1979.

* Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1 et seq.

Spero T. Lappas, Harrisburg, for appellant.

Richard H. Horn, Assistant District Attorney, York, submitted a brief on behalf of Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

This appeal presents a convoluted procedural history, including several changes in defense counsel.[1]   We will first

1.  Trial counsel served through denial of post-trial motions.  Then a public defender served to file an appeal and petition for remand to our court.  Then a privately-retained attorney stepped in to represent

ferret out what transpired procedurally below, leaving explanation and development of facts to be brought out as necessary to give meaning to appellant's arguments.

Our appellant and a co-defendant were tried before juries in the court below, at the following proceedings:

1. Nos. 249 and 250 [2] October Term, 1971—
   Charges: burglary, larceny, and receiving stolen goods.
   Dates of Trial: May 11–12, 1972.
   Verdict: Guilty.

2. No. 443 January Term, 1972—
   Charge: receiving stolen goods.
   Dates of Trial: May 12 and 15, 1972.
   Verdict: Guilty.

3. No. 351 January Term, 1972—
   Charges: burglary, larceny, and receiving stolen goods.
   Dates of Trial: August 24–25, 1972.
   Verdict: Guilty.

4. No. 349 January Term, 1972—
   Charges: burglary, larceny, and receiving stolen goods.
   Dates of Trial: October 19–20, 1972.
   Verdict: Guilty.

5. No. 375 January Term, 1972—
   Charges: burglary, larceny, and receiving stolen goods.
   Dates of Trial: October 20 and 24, 1972.
   Verdict: Guilty.

At the proceedings hereinabove post-trial motions were filed and denied. Sentences on all convictions were rendered June 25, 1973. Appeals from the judgments of sentence were timely filed. On February 5, 1975, appellant filed a petition to remand to the court below for the purpose of conducting an evidentiary hearing to determine effective-

the defense at a hearing on trial counsel's effectiveness (see reference to this hearing below). Now yet another attorney represents appellant.

**2.** No. 250 October Term, 1971, was not made the subject of the instant appeals and thus is not before us and is not listed in the caption, hereinabove.

ness of counsel. This we granted per curiam on February 13, 1975, as to each of the lower court proceedings. Said hearing was conducted on July 17 and 25, and September 4, 1975, resulting in a finding that counsel was ineffective as to the case at No. 249 October Term, 1971, and not ineffective insofar as the other cases were concerned. This finding was embodied in an order of the lower court dated September 20, 1976, which order also directed return of the case to us, whence had come the remand.

Appellant now presents several allegations of error. First it is argued that members of the panel of prospective jurors for the case at No. 443 below were present in the courtroom when the jury in No. 249 gave its verdict. This happenstance is alleged to have caused prejudice to appellant in his trial at No. 443 because of the jurors', ultimately selected from the aforementioned panel, having heard of Corsa's involvement in crime in the case at No. 249. Further an allegation of ineffective counsel is raised, in that trial counsel did not act so as to cure this harm. Secondly, appellant argues that the lower court should have acceded to his counsel's request, at the hearing on effectiveness of counsel, held in 1975 pursuant to our remand order, to be permitted to interview the jurors in the lower court trials at Nos. 249, 349, 375, and 443. The purpose of such interviews was to have been to determine prejudice on the part of these jurors.[3]

At approximately 1:38 P.M. on May 12, 1972, the jury in the case at Nos. 249 and 250 returned a verdict of guilty against appellant and the co-defendant below. The jurors were directed to take seats in the courtroom. After the usual colloquy and instructions regarding post-trial matters, the proceeding terminated. At 2:00 P.M. the same day, the

3. The lower court's refusal to allow this procedure was embodied in its separate order dated September 20, 1976. Technically we believe that this order is not properly the subject of the instant appeal, because the appeal was taken from the judgments of sentence rendered in 1973. But due to the fact that the September 20, 1976 order stems from our grant of remand during the pendency of the appeal, and in the interest of final disposition of this case, we will consider the claim.

case at No. 443 was called. Although the record is not clear, it appears, mainly from the comment of defense counsel and the court, that the panel from which the jury for No. 443 would soon be chosen was sitting in the same courtroom with those jurors who had just completed their work in No. 249—for 22 minutes until 24 of them were sent upstairs for selection of a 12 member jury. Appellant now speculates that there may have been communication between the individuals aforenamed, to his prejudice in the trial of the case at No. 443 because the jurors to be selected therefor may have heard something about No. 249. We rely upon the clear instruction of the trial judge at the commencement of the trial at No. 249 to the jurors, that they "shall not discuss with any member of the jury panel or anyone else for that matter the identity of the defendants in this case or the charges involved nor the fact that the jury was selected or in fact anything at all regarding the proceeding in this case here at this time." At the end of this case, and at the beginning of No. 443 immediately following, appellant cannot point to any untoward communication among jurors or breach of faith in failing to heed the court's admonition. Presumably defense counsel was in the room at the time and could have noticed this had it occurred. In any event nothing substantive appears on the record to indicate the occurrence of this allegedly prejudicial fraternization, and we will not overturn the conviction upon an argument speculative only that such may have happened. Close examination of the notes of testimony from the hearing on competency of counsel shows that neither trial counsel, Corsa, nor his co-defendant could point to an occasion when the jurors from No. 249 were in contact with the panel for No. 443. In fact the co-defendant did not recall whether they were in the same room at the same time. This testimony supports our conclusion that the instant allegation of error is merely speculation, insufficient to cast even a shadow of impropriety upon the trial of No. 443.

So finding, we do not agree with appellant that his counsel was ineffective in failing to pursue this point at the

trial of No. 443. An attorney is not required to raise a meritless argument. Indeed, the claim may be considered waived for present purposes because it was raised and finally litigated, adversely to appellant, at the 1975 hearing on counsel's competency, and no appeal was taken from that disposition.

■ Nor do we find error below in the court's refusal, at the 1975 competency of counsel hearing, to permit an after-the-fact interview of jurors in all cases below. Such a practice has not received wide acceptance in our jurisprudence. See *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960). The lower court did not abuse its discretion in refusing this request, appellant being unable to point post-trial to any event which may have resulted in a prejudice to his fair trial.

Judgments of sentence at Nos. 349, 351, 375 and 443 January Term, 1972, affirmed.

Judgment of sentence at No. 249 October Term, 1971, reversed and the case remanded for new trial, for reason of ineffective assistance of trial counsel.

CERCONE, President Judge, concurs in the result.

SPAETH, J., files a dissenting opinion.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I dissent because I differ with the majority's treatment of appellant's allegation that the jury in the case at No. 443 heard the guilty verdict in the case at No. 249.

The record discloses the following. The jury in the case at No. 249 returned to the courtroom "at or about 1:38" P.M. with its verdict finding appellant guilty of the crimes charged. N.T. at 101 (case No. 249). The court then read the verdict aloud and addressed appellant and his co-defendant, informing them of their post-verdict rights. At 2:00 P.M. the court called the case at No. 443 to trial. At this

point the co-defendant's counsel asked for a side-bar conference because of the presence of prospective jurors in the courtroom. He told the court the following:

Yesterday your Honor, when counsel stipulated on behalf of Woodrow Shellenberger [the co-defendant] that we didn't object to another case being tried this term, I was under the impression maybe this case would be tried next week, because there is another case on it and both are listed for your court; secondly, I am not aware that the intimacy of the jury would be that great *but the jury panel are all in here now when the jury returned its verdict.*

N.T. at 3 (case No. 443) (emphasis added).

The judge apparently did not understand counsel's point because he responded by saying that the jurors from the first trial had specifically been instructed not to talk about the case with anyone. N.T. at 4 (case No. 443). The side-bar conference ended, and the following occurred:

THE COURT: All right, call the jury. Give us 24 names to go upstairs, they can stand.

(At or about 2:30 P.M. the 24 jurors whose names were called left the courtroom.)

Neither the lower court nor the majority opinion has properly responded to appellant's allegation that the jurors in the case at No. 443 heard the verdict in the case at No. 249. The allegation presents a difficult factual question, for the record does not clearly indicate when the jurors *entered* the courtroom. My suspicion, however, is that at least some of them were present at or about 1:38 P.M., when the judge read the guilty verdict. I say this because the co-defendant's counsel requested a side-bar conference shortly thereafter to make this very point.

In *Commonwealth v. Trapp*, 217 Pa.Super. 384, 272 A.2d 512 (1970), we awarded the appellants new trials where certain trial materials, given to the jurors, included information that appellant had been charged with other crimes. In both cases we were concerned with "potential prejudice." Thus, even though there was no evidence in *Trapp* that the

jurors had actually read the materials, we came to the same result as in *Commonwealth v. McDaniel*, 217 Pa.Super. 20, 268 A.2d 237 (1970), where there was such evidence. Likewise in *Ogden v. United States*, 112 F. 523 (3rd Cir., 1902), the Third Circuit granted appellant a new trial where he proved that jurors had been exposed to indictment papers showing that he had previously been found guilty of the same charges, but was unable to show that any of the jurors had read these papers. The court stated: "Trial by jury is properly surrounded by every reasonable safeguard, to insure the absence of any improper influence that might operate upon the minds of the jurors, and give to their verdict the dignity and respect so important to be maintained in the interests of an impartial administration of justice." 112 F. at 527.

I should grant appellant a new trial in the case at No. 443.